UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JEFFREY M. BASS, | ) |
| Plaintiff | ) |
| | ) |
| v. | ) C.A. No. 10-cv-30057-MAP |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER, SOCIAL | ) |
| SECURITY ADMINISTRATION | ) |
| Defendant | ) |

MEMORANDUM AND ORDER REGARDING
PLAINTIFF'S MOTION TO REVERSE AND
DEFENDANT'S MOTION TO AFFIRM
DECISION OF COMMISSIONER
(Dkt. Nos. 8 & 10)

January 4, 2011

PONSOR, D.J.

## I. INTRODUCTION

Plaintiff Jeffrey M. Bass has moved to reverse the
final decision of Defendant Michael J. Astrue denying him
Social Security disability benefits.  (Dkt. No. 8.)
Defendant has moved to affirm the decision.  (Dkt. No. 10.)
For the reasons stated below, the court will allow
Plaintiff's motion and deny Defendant's motion.

## II. BACKGROUND

Plaintiff was born in 1967.  He did not graduate from

high school but received a GED.  He currently resides in a
shelter.  His employment has primarily been in the food
industry.  There is no dispute that Plaintiff was insured
for Social Security Disability Benefits purposes through
June 30, 2005.

On January 21, 2010, an Administrative Law Judge
("ALJ") denied Plaintiff's application for Social Security
Disability Benefits.  The ALJ determined that Plaintiff had
the following severe impairments: anti-social personality
disorder, lumbar disc dessication, degenerative disc
disease, and spondylosis.  (A.R. 9-10.)  However, the ALJ
found that the medical evidence did not support Plaintiff's
claims of pain and weakness in his right hand or depression
and Post-Traumatic Stress Disorder.

Based on his findings, the ALJ determined that
Plaintiff could no longer perform past work, such as working
in the kitchen of a restaurant, but had a Residual
Functional Capacity ("RFC") to perform light, unskilled work
that would only occasionally expose him to others, such as
working as a ticket seller or booth cashier.  (A.R. 15.)
The ALJ thus concluded that Plaintiff could perform work
that existed in significant numbers in the economy based on

his age, education, work experience, and RFC and, accordingly, denied Plaintiff's application.

Plaintiff appeals the ALJ's conclusions regarding his mental impairment, specifically that the ALJ failed to consider Plaintiff's treating physician's opinion and failed to include Plaintiff's social limitations in his hypothetical to the Vocational Expert. For the reasons that follow, the court agrees.[1]

### III. STANDARD OF REVIEW

District courts reviewing administrative determinations in SSA disability cases determine only whether "the final decision is supported by substantial evidence and whether the correct legal standard was used." Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001). "The [Commissioner] may (and, under his regulations, must) take medical evidence. But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts." Rodriguez v.

---

[1] Plaintiff's additional allegation that the ALJ failed to properly categorize his depression as a severe impairment is without merit; no acceptable source had diagnosed Plaintiff with this condition. See 20 C.F.R. § 416.913 (defining acceptable sources as licensed physicians and psychologists).

<u>Sec'y of Health and Human Services</u>, 647 F.2d 218, 222 (1st Cir. 1981)(citations omitted). However, "a judicial award of benefits [is] proper where the proof of disability . . . is very strong and there is no contrary evidence." <u>Seavey</u>, 276 F.3d at 11..

## IV. <u>DISCUSSION</u>

The SSA disability determination is subject to a five-step process under 20 C.F.R. § 404.1520. First, the Commissioner determines whether the applicant is disqualified from disability benefits because he is engaged in substantial gainful activity. Next, the Commissioner considers an applicant's impairment and ascertains whether it meets the threshold requirements for severity and duration. Third, if that severe impairment meets or equals the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the application is granted. If the individual's disability does not meet or equal the listings, the Commissioner proceeds to the fourth step and assesses the applicant's residual functional capacity and determines whether he can still perform past relevant work. If the applicant cannot perform past relevant work, the

Commissioner finally considers his age, education, and work experience to see if he is able to do any other available job; if not, the application is granted.  See Seavey, 276 F.3d at 5.  The claimant bears the burden of proving his disability, but the Commissioner bears the burden of proving that applicable work exists in the national economy.  20 C.F.R. § 404.1512(a).

Here, the ALJ erred at the second step.  The court finds that there is no substantial evidence to support the ALJ's finding that Plaintiff's mental impairment is not sufficiently severe as to render him disabled.

A. Plaintiff's Credibility.

At the outset of his report, the ALJ described Plaintiff's credibility as "substantially tarnished" by his criminal history, which included convictions for drug and prostitution-related offenses.  (A.R. 13.)  This skepticism is apparent throughout the ALJ's report.[2]  Although the

---

[2] For example, in describing the lengthy report of Plaintiff's social worker at the shelter where Plaintiff lives, whose opinion the ALJ gave no weight, the AlJ noted, "Mr. Lanciano failed to mention any of the claimant's lengthy history of criminal behavior in his summary of the claimant's condition."  In a similar vein, the ALJ determined that Plaintiff was not forthcoming about his

ALJ's credibility determination is entitled to deference,
Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192,
195 (1st Cir. 1987), deference has its limits. Where, as
here, the determination was made not based on Plaintiff's
demeanor at the hearing but instead on his past conduct, the
ALJ's opinion has limited force. While it is true that a
criminal record may undermine credibility, past misconduct
alone cannot in itself provide a basis for automatically
rejecting testimony outright.

B. Evidence of Plaintiff's Mental Impairment.

Plaintiff was evaluated by Dr. Leon Hutt, who diagnosed
him with anti-social personality disorder. Dr. Hutt opined
that Plaintiff had mild to moderate limitations from mental
impairments. Notably, he concluded his report with the
statement that "[i]t is unclear to me whether [Plaintiff]
can psychologically tolerate stressors associated with
employment." (A.R. 271.)

---

criminal history at the hearing. However, a review of the
transcript reveals that Plaintiff readily disclosed several
offenses. The ALJ's inquiry concerned any offenses during
the last fifteen years, and Plaintiff listed those back to
1999. From Plaintiff's medical history, the ALJ learned of
additional convictions during Plaintiff's lifetime, but
there are no dates attached to those.

The only provider to treat Plaintiff on a regular basis was his therapist, Larry Flowers.  Consistent with Dr. Hutt's opinion, Flowers opined that Plaintiff manifested "difficulty thinking or concentrating," "perceptual or thinking disturbances," and "emotional withdrawal or isolation."  (A.R. 431.)  He stated that Plaintiff would be unable "to meet competitive standards" in the following areas: (1) complete a normal workday and workweek without interruptions from psychologically based symptoms; (2) get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; (3) deal with normal work stress.  (A.R. 432.)

A record reviewer, who never met Plaintiff but had only Dr. Hutt's report to consider, determined that Plaintiff suffered from anti-social personality disorder and found him to have moderate limitations in his ability to function socially and to maintain concentration, persistence, or pace.  (A.R. 283.)

C. The ALJ's Determination.

Based on Dr. Hutt's diagnosis, the ALJ found that

Plaintiff suffered from anti-social personality disorder.[3] He further determined that the disorder did not medically equal a listed impairment because it was not sufficiently severe under the regulation requirements:

> The required level of severity for these disorders is met when the requirements in both A and B are satisfied.
>
> > A. Deeply ingrained, maladaptive patterns of behavior associated with one of the following:
> >
> > 1. Seclusiveness or autistic thinking; or
> >
> > 2. Pathologically inappropriate suspiciousness or hostility; or
> >
> > 3. Oddities of thought, perception, speech and behavior; or
> >
> > 4. Persistent disturbances of mood or affect; or
> >
> > 5. Pathological dependence, passivity, or aggressivity; or
> >
> > 6. Intense and unstable interpersonal relationships and impulsive and damaging behavior; AND
> >
> > B. Resulting in at least two of the following:
> >
> > 1. Marked restriction of activities of daily living; or

---

[3] A personality disorder exists when personality traits are inflexible and maladaptive and cause either significant impairment in social or occupational functioning or subjective distress. Characteristic features are typical of the individual's long-term functioning and are not limited to discrete episodes of illness.

20 C.F.R. 400, Subpart P, Appendix 1, § 12.08.

> 2. Marked difficulties in maintaining social functioning; or
>
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
>
> 4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. 400, Subpart P, Appendix 1, § 12.08.

Specifically, the ALJ found that Plaintiff had only "mild" or "moderate" difficulties (as opposed to "marked") in daily living, social functioning, and ability to concentrate, persist, and pace. (A.R. 15.) As to Plaintiff's moderate ability to concentrate, persist, and pace, the ALJ opined that "[t]his is primarily a function of his anti-social personality disorder, but no cognitive limitations have been demonstrated." (Id.)

D. Lack of Substantial Evidence.

Mindful that its standard on review is whether "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the Commissioner's] conclusion," Ortiz v. Sec'y of Health and Human Services, 955 F.2d 765, 769 (1st Cir. 1991) (quoting Rodriguez v. Sec'y of Health and Human Services, 647 F.2d 218, 222 (1st Cir. 1981)), the court finds that the record

lacks substantial evidence to support the ALJ's denial of
Plaintiff's application for Social Security benefits.

Specifically, the court finds that the ALJ erred in
making his determination, primarily because he improperly
gave Flowers' opinion "no weight at all." (A.R. 14). While
an ALJ "may reject a treating physician's opinion as
controlling if it is inconsistent with other substantial
evidence in the record," Castro v. Barnhart, 198 F. Supp. 2d
47, 54 (D. Mass. 2002), here, Flowers' opinion echoed that
of Dr. Hutt, to whose opinion the ALJ gave "significant
weight" and, moreover, was not inconsistent with any other
evidence in the record. (A.R. 14.)

Additionally, the basis on which the ALJ discounted
Flowers' opinion is erroneous. The ALJ stated that Flowers'
opinion "would normally [be] entitled to consideration" but
not here where "Mr. Flowers appears to give his opinion
based on his belief that [Plaintiff] suffers from PTSD and
depression." (A.R. 14.). Because, as noted above, no
acceptable source had diagnosed Plaintiff with these
impairments, the ALJ refused to credit any part of Flowers'
opinion. However, Dr. Hutt and the ALJ both determined that
Plaintiff suffered from anti-social personality disorder,
and Flowers' opinions regarding Plaintiff's ability to work

are consistent with this diagnosis.  Flowers did not
diagnose Plaintiff.  Instead, he described the limitations
that he observed in Plaintiff during their biweekly therapy
sessions over the preceding year.  See 20 C.F.R.
404.1527(d)(2)(I) ("Generally, the longer a treating source
has treated you and the more times you have been seen by a
treating source, the more weight we will give to the
source's medical opinion.").

The ALJ's refusal to consider Flowers' opinion
significantly impacted his final decision that Plaintiff's
mental impairment did not render him disabled.  At the
hearing, the ALJ posed a hypothetical to the Vocational
Expert that included no mention whatsoever of Plaintiff's
mental limitations.  The Vocational Expert provided a list
of jobs consistent with the hypothetical.  Subsequently,
Plaintiff's attorney added Plaintiff's mental limitations as
described by Flowers to the ALJ's hypothetical.  In
response, the Vocational Expert opined that Plaintiff would
be unable to do any job.  (A.R. 65.)

Finally, the court is troubled by the ALJ's reliance on
a one-line notation in a medical record on which the ALJ
placed the "greatest weight." (A.R. 10)  In February, 2009,
Plaintiff injured his right hand in a fistfight and was

treated by Dr. Michele Gocuay.  Dr. Gocuay's medical advice to Plaintiff after the examination consisted of the following: "avoid lifting heavy objects."  (A.R. 266.)  The ALJ described this report as holding that "the claimant was considered capable of work, subject only to the restriction that he 'avoid lifting heavy objects.'"  (A.R. 10.)

On review of the record, it is apparent that this opinion was given in response solely to Plaintiff's hand injury and not as an opinion concerning Plaintiff's overall ability to work.  Furthermore, the ALJ's statement that Plaintiff had described Dr. Gocuay as his primary care physician is inaccurate.  In support of this statement, the ALJ cites to Dr. Hutt's report in which Dr. Hutt, in describing Plaintiff's right hand injury, wrote that Plaintiff "sees a physician at the Northgate Plaza, whom he identified as Michelle Gloucoy [sic].  She prescribes an anti-inflammatory and a muscle relaxant."  (A.R. 269.) There is no evidence that Dr. Gocuay is either Plaintiff's primary physician or that the doctor has ever examined Plaintiff for any cause other than his hand.

In sum, the record lacks substantial evidence to

support the ALJ's finding that Plaintiff's mental impairments did not render him unable to work.  The record, in fact, includes scant support for that proposition.

## V. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 8) is hereby ALLOWED, and the Commissioner's Motion to Affirm the decision of the Commissioner (Dkt. No. 10) is hereby DENIED.  Plaintiff is entitled to benefits from the date of onset of disability, June 30, 2005.  The clerk will enter judgment for Plaintiff. The case may now be closed.

It is So Ordered.

<u>/s/ Michael A. Ponsor</u>
MICHAEL A. PONSOR
U.S. District Judge